IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHERISE CARR, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No.:  11 CV 593 |
| v. | ) | |
| | ) | |
| VEDDER PRICE, P.C., an Illinois corp., | ) | |
| LYNN TILTON, individually | ) | Jury Demanded |
|     Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Sherise Carr ("Plaintiff"), by her attorneys Golden Law, complains as follows: This is a civil action brought by Plaintiff, against Vedder Price, P.C., formerly known as Vedder, Price, Kaufman & Kammholz, P.C., an Illinois corporation ("Vedder" sometimes referred to as "the Firm") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. ("Title VII"), violation of Family Medical Leave Act of 1993, as amended 29 U.S.C. 2601 et seq. ("FMLA"), Retaliatory Discharge and against Lynn Tilton ("Tilton") and Vedder (collectively "Defendants") for violations of 42 U.S.C. §1981. Plaintiff claims that Defendants acting under color of state law discriminated against her based on her race "Black" and retaliated against her for engaging in a protected activity, and intentionally subjecting her to systematic and continuous harassment and retaliation as a result of her engaging in a protected activity, in violation of Title VII, FMLA and 42 U.S.C. §1981. After filing this lawsuit against Defendants and taking leave under the Firm's leave policy pursuant to Vedder's recommendation, Vedder discharged Plaintiff in retaliation for filing this lawsuit and taking leave under the Firms leave policy and in violation of FMLA when it discriminated against Plaintiff by terminating Plaintiff for exercising her right to FMLA.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and 1343.  This action is authorized and instituted pursuant to § 2000e-5 (f)(3) of the Civil Rights Act of 1964, as amended. Pursuant to 28 U.S.C. §1391(b)(1), venue is proper in the Northern District of Illinois, Eastern Division because the claims arose out of incidents occurring in this judicial district.

## **PARTIES**

2.  Sherise Carr, Plaintiff, is an African American and resident of the State of Illinois. At all times material herein, she is an employee within the meaning of Title VII, an eligible employee within the meaning of FMLA and a member of a protected class under 42 U.S.C. §1981.

3.  Defendant, Vedder Price, is an Illinois corporation validly existing under the laws of the State of Illinois and an employer within the meaning of Title VII and FMLA.

4.  Defendant, Lynn Tilton is a United States citizen and an Illinois resident.

## **FACTS**

5.  Plaintiff began her employment with Vedder on or about August 20, 2001, as a Document Center Operator. Plaintiff was employed with Vedder for 10 years until she was terminated via a letter dated August 22, 2011.

6.  Since the beginning of Plaintiff's employment and at all times prior to July 2007, Plaintiff had a spotless personnel record with no complaints from co-workers or supervisors.

7.  On or about July 2007, Plaintiff through her employment has been subjected to systematic and continuous racial discrimination by management, namely her immediate supervisor, Lynn Tilton ("Tilton").  Said harassment and discrimination has included but is not limited to overloading Plaintiff with a heavy work load while allowing non black operators to perform a lighter work load as well as allowing non black operators to have preferential schedule changes.  Strategically relocated all black operators to the front of the

2

department and routinely distributed work to the black operators in the front of the department while not distributing the work fairly among non black operators in the back of the department.

8. On July 12, 2007, Plaintiff was discriminated against due to her race when she was denied a schedule change even though schedule changes were being accommodated at the time. As a basis for denying Plaintiff's schedule change, Plaintiff was told that no schedule changes would be accommodated unless approved by management. This was mere pretext. This action was targeted toward Plaintiff because of her race and no other non black employees in similar situations were treated in this manner.

9. On or about September 7, 2007, Plaintiff received via interoffice mail in her mailbox a document entitled "The Baltimore Workplace Civility Study." This document surveyed employees from the Baltimore area where respondents were asked to consider uncivil behavior that they have encountered. Said document had areas highlighted uncivil workplace behavior such as "rude, disrespectful, dismissive,…or inappropriate," "shifting the blame for your mistake to a co-worker," "neglecting to say please/thank you," the article also highlighted demographic issues which stated "majority said that females were the perpetrators of the uncivil incident." The action of placing this document with the areas highlighted in Plaintiff's mailbox was targeted toward Plaintiff because of her race and no other non black employees in similar situations were treated in this manner.

10. On or about November 14, 2007, Plaintiff issued a formal complaint along with an outline of all the racial discrimination she was subjected to by her immediate supervisor Tilton, to Laura Chapa, Human Resource Manager ("Chapa") as outlined in the Vedder's policy on harassment. An investigation of Plaintiff's allegations of harassment were made and a determination was made that there was no evidence of harassment by Tilton. When Plaintiff questioned Chapa regarding the research performed to reach this conclusion she was

told that she would have to put her request in writing to Patricia Lapinksi the Director of Administration ("Lapinski"). She was promised the materials and to date Plaintiff has not received the materials.

11. As a result of Plaintiff filing a formal complaint against Tilton, Plaintiff has been the subject of repeated racial harassment by Tilton in retaliation for engaging in a protected activity. Such harassment includes but is not limited to continuing to overload Plaintiff with work and whispering to co-workers about Plaintiff.

12. As a result of the continued harassment and ridicule experienced by Plaintiff, Plaintiff complained to Chapa regarding the harassing treatment she was being subjected to by Tilton and informed Chapa that if nothing was going to be done about it Plaintiff would be forced to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Nothing was done to prevent or stop Tilton from harassing Plaintiff.

13. Vedder was well aware of the racial discrimination and harassment that black employees were being subjected to by Tilton as early as August 28, 2006, when one of its employees wrote Chapa a seven page memo. Vedder has failed to address and rectify the situation in violation of Title VII and 42 U.S.C. §1981. Vedder's failure to address and rectify the situation has caused great harm to the Plaintiff.

14. Plaintiff followed the procedures as required by Vedder's policy on harassment and Vedder did nothing to prohibit Tilton from harassing and retaliating against Plaintiff.

15. Tilton's behavior and pattern of racial discrimination against black employees is such that she is systematically eliminating them one by one from the document center.

16. On January 22, 2008, Plaintiff complained to the EEOC about the racial discrimination she was being subjected to as a result of her employment with Vedder. As a result of Plaintiff engaging in a protected activity she has been subjected to repeated

harassment and retaliation not only by her immediate supervisor, but also by fellow co-workers.

17. As a result of Plaintiff complaining to the EEOC, she was subjected to systematic and continuous harassment and retaliation that included, among other things Tilton and co-workers making snide remarks about Plaintiff including but not limited to statements like "I should file charges."

18. As a result of Plaintiff engaging in a protected activity, Tilton, in retaliation assigned to Plaintiff duties that were not assigned to non black operators. Tilton has manipulated and turned Plaintiff's co-workers against her and would begin to give Plaintiff assignments outside of the established procedures for distributing work within the department. The actions by Tilton constitutes and creates a hostile work environment for Plaintiff. When Plaintiff complained to Chapa she was told by Chapa that she needed to work on her demeanor with the other document operators and to try to be more of a team player.

19. As a direct result of Plaintiff engaging in a protected activity, which included complaining about racial harassment and filing a charge of discrimination with the EEOC, Vedder, by and through its supervisor, Tilton has systematically and continually retaliated against Plaintiff. That retaliation has included but is not limited to accusing Plaintiff of improperly completing assignments. Trying to force another operator to say Plaintiff made a mistake on a document in an effort to tarnish Plaintiff's employment record and reputation. Forcing front desk operators to hold difficult jobs specifically for Plaintiff until she returns from lunch when other operators could have completed the assignments.

20. On January 22, 2008, Plaintiff filed a charge of discrimination with the EEOC for Race Discrimination, in violation of Title VII, which she later amended on June 5, 2008 to include retaliation (Charge number 440-2008-02330), attached hereto as Exhibit A.

5

21. On October 28, 2010, the EEOC issued Plaintiff a Right to Sue letter, attached hereto as Exhibit B.

22. Plaintiff's Right to Sue letter, was not mailed to Plaintiff by the EEOC until November 29, 2010, EEOC envelope attached hereto as Exhibit C. Upon receiving this letter, Plaintiff filed suit against Defendants on January 27, 2011.

23. Illinois Department of Human Rights adopted the findings of the EEOC and issued Plaintiff a right to sue letter on March 30, 2011.

24. On or about January 4, 2011, Plaintiff began experiencing as a result of her employment with Defendant symptoms of anxiety and depression among other things and requested unpaid time off from work pursuant to the Firm's leave policy. Plaintiff's last day at work was January 12, 2011.

25. On February 1, 2011, due to Plaintiff's continued symptoms of anxiety and depression (among other things) Plaintiff experienced as a result of the thought of returning to work, Plaintiff sent a letter to Defendant requesting an additional sixty (60) days of unpaid personal leave.

26. In response Defendant's Human Resources ("HR") Department sent Plaintiff FMLA and Short-term Disability ("STD") paperwork to complete.

27. On or about February 15, 2011, Plaintiff sent Defendant's HR Department an email clarifying that Plaintiff wanted to exercise unpaid personal leave and not FMLA, and specifically asked if her request for unpaid personal leave was being denied.

28. On or about February 25, 2011, Defendant informed Plaintiff that "pursuant to firm practice, if the leave is one that should be covered by FMLA, we require you to apply for FMLA leave to determine eligibility. FMLA takes priority over personal leave."

29. On or about April 15, 2011, Defendant sent a letter stating, among other things, that her unpaid personal leave was granted. Additionally, if Plaintiff had not returned to work by April 25, 2011, Defendant will consider her to have abandoned her job.

30. That Plaintiff was unaware that her request for 60 days unpaid personal leave had been granted.

31. That Plaintiff had no intent to abandon her job.

32. That Plaintiff was forced by Defendant into taking FMLA because if she did not Plaintiff would have been considered to have abandoned her job.

33. On or about February 15, 2011, was the last time Plaintiff received compensation from the Defendant, prior to taking FMLA leave.

34. That on or about February 15, 2011, was sent a premium notice from Defendant and Plaintiff began making premium insurance payments to Defendant to maintain her health insurance.

35. On or about April 26, 2011, Plaintiff submitted completed FMLA documentation.

36. In a letter dated April 28, 2011, Vedder retroactively granted Plaintiff a 12-week leave under FMLA, backdated to January 1, 2011.

37. On May 3, 2011, Plaintiff sent a letter to Defendant seeking clarification of the dates for FMLA, Paid Time Off ("PTO"), and unpaid vacation time accrual from Defendant.

38. On May 5, 2011, Vedder sent another letter to Plaintiff, stating per the firm's policy "FMLA runs concurrently with vacation time and unpaid leave." Vedder also clarified that her FMLA leave dates would begin January 13, 2011.

39. On May 11, 2011, Plaintiff sent Vedder a doctor's statement extending her leave until May 26, 2011.

40. A subsequent doctor's statement was mailed to Defendant on May 25, 2011, extending Plaintiff's leave until June 23, 2011.

41. A subsequent doctor's statement was mailed to Defendant on June 21, 2011, extending the Plaintiff's leave until September 12, 2011.

42. On or about August 22, 2011, Plaintiff received a letter from Vedder terminating her from employment for an alleged violation of the STD policy. This is mere pretext. Plaintiff did not violate the Firm's STD policy.

43. According to Section 2.02.01 of the firm's Compensation and Benefit's policy, "[a]ny leave for which Short-term Disability benefits are provided will run concurrently with the employee's entitlement under FMLA." The firm's STD policy is silent with respect to performing work for another employer while on approved leave.

44. That Plaintiff worked for a temporary agency for seven (7) non-consecutive days, earning minimum wage. Namely: April 22, 23, 26, 27, May 2, 3 and 5th while on unpaid leave with Defendant, to pay her insurance premiums to Defendant while and to preserve her skill set.

45. That at the time of Plaintiff's termination she was still on approved leave with Vedder.

46. That there exists a discrepancy between Plaintiff and Defendant as to whether Plaintiff performed work while on STD leave.

47. At the time Plaintiff performed temporary work, for seven non consecutive days, Plaintiff had not received material from Defendant that she was in fact eligible and approved for FMLA leave. Therefore, Plaintiff did not violate the Firm's STD policy.

48. That the last date that Plaintiff performed temporary work was in fact the date Defendant actually mailed notice to Plaintiff of Plaintiff's FMLA eligibility.

49. That at the time Plaintiff performed temporary work she was not on FMLA leave.

50. That because Defendant's state that Plaintiff was terminated because she was employed and receiving STD, there exists a genuine issue of material fact as to whether the

Plaintiff was actually being terminated for an alleged violation of FMLA as the Firm's STD policy does not prohibit temporary employment.

51. That Defendant terminating Plaintiff was in Retaliation for Plaintiff filing this lawsuit.

52. That Defendant terminating Plaintiff was in Retaliation for Plaintiff exercising her rights under FMLA.

53. That Defendant terminating Plaintiff was in Retaliation for Plaintiff exercising her rights under the Firm's STD policy.

54. Defendant's actions in terminating Plaintiff were in violation of FMLA in that Defendants unlawfully discriminated and retaliated against Plaintiff for exercising her right to FMLA in violation Section §2615(a)(2) of the act.

55. At all times material herein, Plaintiff suffered as a direct result of Vedder's conduct, injury including but not limited to: monetary loss, loss wages, emotional distress, mental anguish, feelings of unjust treatment, harm to her reputation, pain and suffering and personal indignity.

**COUNT I:  Discrimination – Harassment Because of Race**

56. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-five (55) as if fully set forth herein.

57. Plaintiff is an employee as defined by Title VII and a member of a protected class under 42 U.S.C. §1981.

58. Plaintiff was harassed by Tilton a supervisor employed by Vedder on July 2007, through and including January 12, 2011, because of her race in violation of Title VII and 42 U.S.C. §1981.  Such harassment by Tilton was such that it would be found to be hostile or abusive to a reasonable person.  No other non black employees similarly situated as Plaintiff have been treated as Plaintiff by Tilton.  The alleged reasons offered by Vedder as a basis for

9

not considering the treatment suffered by Plaintiff as racial harassment was mere pretext. Such conduct by Tilton a supervisor of Vedder creates a hostile and offensive work environment.

59. At all times relevant herein, Tilton was a supervisor of Vedder and was authorized to take tangible employment actions over Plaintiff.

60. At all times relevant herein, Vedder, by not prohibiting Tilton from harassing Plaintiff because of her race, acquiesced in the discriminatory treatment suffered by Plaintiff, in violation of Title VII and 42 U.S.C. §1981.

WHEREFORE, Plaintiff, Sherise Carr demands trial by jury and judgment in her favor and against Defendants and prays for the entry of an order granting the following relief:

A.    An injunction against such harassment for Vedder's management;

B.    Reimbursement for any and all of Plaintiff's lost wages incurred as a result of Defendants' conduct;

C.    Compensatory and special damages for any and all monetary loss suffered as a result of Defendants' conduct;

D.    General damages for Plaintiff's emotional distress, mental anguish, feelings of unjust treatment, harm to her reputation, pain and suffering and personal indignity suffered as a result of Defendants' conduct;

E.    Punitive damages to deter such future conduct;

F.    Removal of derogatory information from her personnel file;

G.    An order requiring Vedder to provide all supervisors and management staff with diversity and anti-discriminatory training;

H.    Her cost of bringing this action, including reasonable attorney's fees; and

I.    Such other relief that this Court may deem equitable and just.

**COUNT II:  Discrimination – Retaliation**

10

61. Plaintiff re-alleges and incorporates paragraphs one (1) through sixty (60) as if fully set forth herein.

62. Plaintiff is an employee as defined by the Civil Rights Act of 1964, 42 U.S.C. §2000e ("Title VII") and a member of a protected class under 42 U.S.C. §1981.

63. Plaintiff was retaliated against by Tilton a supervisor of Vedder for filing a formal complaint of harassment and for filing a charge of discrimination with the EEOC in violation of Title VII and 42 U.S.C. §1981.

64. As a direct and proximate result of Plaintiff filing a charge of discrimination with Defendant and the EEOC, Defendants systematically and continually retaliated against Plaintiff. That retaliation has included but is not limited to accusing Plaintiff of improperly completing assignments. Trying to force another operator to say Plaintiff made a mistake on a document in an effort to tarnish Plaintiff's employment record and reputation. Forcing front desk operators to hold difficult jobs specifically for Plaintiff until she returns from lunch when other operators could have completed the assignments. In violation of Title VII and 42 U.S.C. §1981. Said conduct creates a hostile and offensive work environment.

65. At all times relevant herein, Tilton was a supervisor of Vedder and was authorized to take tangible employment actions over Plaintiff.

66. At all times relevant herein, Vedder, by not prohibiting Tilton from retaliating against Plaintiff for filing a charge of discrimination with the EEOC, acquiesced in the discriminatory treatment suffered by Plaintiff, in violation of Title VII and 42 U.S.C. §1981.

WHEREFORE, Plaintiff, Sherise Carr demands trial by jury and judgment in her favor and against Defendants and prays for the entry of an order granting the following relief:

A.      An injunction against further retaliation and harassment by Defendant's management staff;

B.      Reimbursement for any and all of Plaintiff's lost wages incurred as a result of Defendants' conduct;

C.      Compensatory and special damages for any and all monetary loss suffered as a result of Defendants' conduct;

D.      General damages for Plaintiff's emotional distress, mental anguish, feelings of unjust treatment, harm to her reputation, pain and suffering and personal indignity suffered as a result of Defendants' conduct;

E.      Punitive damages to deter such future conduct;

F.      Removal of derogatory information from her personnel file;

G.      An order requiring Vedder to provide all supervisors and management staff with diversity and anti-retaliation training;

H.      Her cost of bringing this action, including reasonable attorney's fees; and

I.      Such other relief that this Court may deem equitable and just.

## COUNT III – Family Medical Leave Act Violation

67.     Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-six (66) as if fully set forth herein.

68.     At all relevant times herein Plaintiff engaged in a protected activity.

69.     Defendant committed a prohibited act when it terminated Plaintiff for engaging in a protected activity.

70.     Defendant committed a prohibited act when it unlawfully discriminated and retaliated against Plaintiff when it terminated Plaintiff for exercising her right to FMLA in violation Section §2615(a)(2) of the act.

WHEREFORE, Plaintiff, Sherise Carr demands trial by jury and judgment in her favor and against Defendants and prays for the entry of an order granting the following relief:

A.     An injunction against further retaliation and harassment by Defendant's management staff;

B.     Reimbursement for any and all of Plaintiff's lost wages and benefits incurred as a result of Defendants' conduct;

C.     Compensatory and special damages for any and all monetary loss suffered as a result of Defendants' conduct;

D.     General damages for Plaintiff's emotional distress, mental anguish, feelings of unjust treatment, harm to her reputation, pain and suffering and personal indignity suffered as a result of Defendants' conduct;

E.     Punitive damages to deter such future conduct;

F.     Removal of derogatory information from her personnel file;

G.     An order requiring Vedder to provide all supervisors and management staff with diversity and anti-retaliation training;

H.     Her cost of bringing this action, including reasonable attorney's fees; and

I.     Such other relief that this Court may deem equitable and just.

### COUNT IV – Retaliatory Discharge

71.     Plaintiff re-alleges and incorporates paragraphs one (1) through seventy (70) as if fully set forth herein.

72.     Plaintiff was an employee for Vedder from August 20, 2001 through August 22, 2011.

73.     That on August 22, 2011, Plaintiff was terminated from employment in retaliation for filing a lawsuit under Title VII and § 1981 against Defendants, and in retaliation for exercising her legally protected right to exercise FMLA.

74.     Defendant's actions clearly violate Title VII, FMLA and §1981, and several clearly mandated public policies protecting Plaintiff from such actions.

13

75.     Defendant's stated reason for discharging Plaintiff is mere pretext and no other similarly situated employee outside of the protected group was fired.

76.     At all times relevant herein, Vedder, retaliated against Plaintiff when it discharged Plaintiff in violation of Title VII, FMLA and § 1981.

WHEREFORE, Plaintiff, Sherise Carr demands trial by jury and judgment in her favor and against Defendants and prays for the entry of an order granting the following relief:

A.     An injunction against such harassment for Vedder's management;

B.     Reimbursement for any and all of Plaintiff's lost wages and benefits incurred as a result of Defendants' conduct;

C.     Compensatory and special damages for any and all monetary loss suffered as a result of Defendants' conduct;

D.     General damages for Plaintiff's emotional distress, mental anguish, feelings of unjust treatment, harm to her reputation, pain and suffering and personal indignity suffered as a result of Defendants' conduct;

E.     Punitive damages to deter such future conduct;

F.     Removal of derogatory information from her personnel file;

G.     An order requiring Vedder to provide all supervisors and management staff with diversity and anti-discriminatory training;

H.     Her cost of bringing this action, including reasonable attorney's fees; and

I.     Such other relief that this Court may deem equitable and just.

Respectfully submitted,

 /s/ Shanita Golden
 Attorney for Plaintiff

Golden Law
Shanita Golden (6298398)
Attorney for Plaintiff
2150 S. Canalport, Suite 5A-6
Chicago, Illinois 60608
(773) 257-7332

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this day, I caused a copy of, ***PLAINTIFF SHERISE CARR'S SECOND AMENDED COMPLAINT TO DEFENDANTS VEDDER PRICE P.C. AND LYNN TILTON***, to be served upon counsel of record a true and correct copy of the same by placing a copy of the same via email to shinshaw@vedderprice.com and ejepson@vedderprice.com

Dated this 11th day of October, 2011.

/s/ Shanita Q. T. Golden_____
Shanita Q. T. Golden

Golden Law
Attorney for Plaintiff
2150 S. Canalport
Suite 5A-6
Chicago, IL 60608